AMERICAN MERCERIZING CO. et al. v. HAMPTON CO. et al.

(Circuit Court, D. Massachusetts. August 7, 1906.)

No. 44.

PATENTS—ANTICIPATION—PROCESS FOR MERCERIZING FABRICS.

The Thomas & Prevost patents, Nos. 600,826 and 600,827, for processes of mercerizing vegetable fibers and fabrics, are void for anticipation by the Lowe English patent, No. 4,452, of 1890.

In Equity.

Bartlett, Brownell & Mitchell and Louis C. Raegener, for complainant.

George S. Roberts & Bro. and Henry F. Harris, for defendant.

LOWELL, Circuit Judge. This is a bill in equity to restrain the infringement of letters patent No. 600,826, issued to Thomas and Prevost for improvements in processes of mercerizing vegetable fibers, and No. 600,827, issued to the same persons for improvements in treating vegetable fibers or fabrics for dyeing purposes. The following claims are in suit:

"No. 600,826.

"(1) The herein-described process of treating vegetable fiber for giving it a silky luster and feel, which consists in subjecting the material to stretching, mercerizing it, maintaining the tension during the operation of mercerizing and, when such operation is completed, relaxing the tension, as set forth.

"(2) The herein-described process of treating tightly-spun long-fibered vegetable fiber for giving it a silky luster and feel, which consists in subjecting the material to a stretching action, next subjecting the tightly-stretched material to the action of a mercerizing fluid until it assumes a parchment-like appearance, and finally washing or otherwise removing the mercerizing fluid, maintaining the tension upon the whole until the mercerizing fluid is removed, substantially as and for the purpose set forth.

"(3) The herein-described process of treating vegetable fibers, which consists in first stretching, then subjecting the stretched material to the action of a mercerizing fluid until it assumes a parchment-like appearance, next subjecting the material to a greater tension while under the action of the mercerizing fluid until a peculiar silky luster appears, maintaining the tension while washing or otherwise removing the mercerizing fluid from the material, substantially as and for the purpose set forth."

"No. 600,827.

"(1) The herein-described process of treating vegetable fiber for giving it a silky luster and feel, which consists in subjecting the fibers to the action of a mercerizing fluid, without tension, and then during the mercerizing action, that is after the fiber is wetted by the mercerizing fluid and before the removal or neutralization of the said fluid, subjecting the material to a stretching action sufficient to produce a silky luster and feel and prevent shrinkage, substantially as and for the purpose set forth.

"(2) The herein-described process of treating vegetable fiber for giving it a silky luster and feel, which consists in subjecting tightly-spun long-fibered vegetable fiber to the action of a suitable mercerizing fluid, without tension at the outset, and then subjecting said tightly-spun fiber to such a stretching action that a silky luster and feel are produced said-stretching action taking place after the fibers are wetted by the mercerizing fluid and before the removal or neutralization of the said fluid, substantially as and for the purpose set forth."

"(6) The herein-described process of treating vegetable fiber for giving it a silky luster and feel, which consists in subjecting the material to the action of a mercerizing fluid, without tension at the outset, then subjecting said material to a stretching action, and continuing and increasing the stretching of the material while it is exposed to the action of the mercerizing fluid until a silky luster is produced thereon, and finally neutralizing or washing it to remove the mercerizing fluid, substantially as set forth."

The defendants denied the validity of the patents, and their infringement. In order to explain the controversy, the history of the mercerizing process and its discovery must be given at some length.

In 1850, John Mercer took out a patent in England, No. 13,296 of that year, for "Improvements in the Preparation of Cotton and other Fabrics and Fibrous Materials." Therein his invention was stated to consist "in subjecting vegetable fabrics and fibrous materials, cotton, flax, etc., either in the raw or manufactured state, to the action of caustic soda or caustic potash, dilute sulphuric acid, or chloride of zinc." This treatment caused cloth and fiber to shrink, to become thicker, closer, and heavier, and especially to acquire "greatly augmented and improved powers of receiving colors in printing and dyeing." The process had little or no commercial value, because the treatment caused a shrinkage of the fiber which left the product practically unfit for use. Rec. p. 484.

In 1889 and 1890, Lowe took out two patents in England, No. 20,314 of 1889, and No. 4,452 of 1890. The latter is relied upon by the defendants as an anticipation of the patents in suit. It concerned "improvements in the treatment of materials composed of cellulosic fibers (such as cotton and flax), through which treatment a better appearance or finish and increased strength and a greater power of assimilating coloring matters and dyes is induced." Lowe's process consisted in treating cloth or yarn with caustic soda; shrinkage being prevented by stretching during or immediately after the treatment. Lowe's process thus differed from Mercer's in two respects: First, in a limitation of the mercerizing process to a treatment of cotton or flax with caustic soda, instead of extending it to a treatment of any vegetable fiber with either alkali or acid; and, second, in stretching the cloth or yarn before drying it. "The material so treated will possess all the advantages of being considerably stronger, having a greater capacity of absorbing natural moisture; having a more regu-

lar, close, and glossy appearance, and of taking up many dyes and coloring matters more readily and economically, while at the same time the objection of having been shrunk is obviated." There is no evidence that Lowe's process, under his name, ever went into commercial use.

On March 23, 1895, Thomas and Prevost, the patentees of the patents in suit, filed an application in Germany, of which country they were citizens, for a patent concerning a process for "the dyeing of cloths woven from raw material out of mixed (animal and vegetable) fibers, to attain color effects which hitherto were not attainable by dyeing the raw goods in the piece." "The vegetable fiber (for example, cotton) is, as is well known, chemically altered by the treatment with strong alkalies or acids." "At the same time, the cotton acquires a very great affinity for all dye-stuffs and mordants." "In order to avoid the shrinking or narrowing of the goods, the cotton, either before the weaving or spinning, is treated with the above-named substance; or the already made raw goods, stretched by the use of a special mechanical contrivance into a condition of full width, is passed through the fluid preparation mentioned, and is washed in the same state." Apparently Thomas and Prevost then intended to stretch only the woven fabric, leaving the mercerized yarn to be woven after shrinking. Their amended specifications of June 20th, however, contemplated stretching either yarn or cloth. The claim was as follows:

"Process of enhancing the affinity of vegetable fiber to be dyed, for dye-stuffs and mordants by preliminary treatment with strong bases or acids, characterized by this: That the vegetable fiber in the form of skein, or already woven, or finally loose before the spinning, is exposed in a tensely stretched condition to the action of bases or acids, and during retention of this condition is washed out, until the internal fiber-tension has relaxed, for the purpose of avoiding the shrinking of the fiber."

It will be noticed that this patent, like that of Mercer, contemplated the treatment of any vegetable fiber with either alkali or acid. Rec. pp. 4, 5.

A proceeding to annul this patent, No. 85,564, was brought in the German Patent Office, based chiefly upon the English patent to Lowe. The patentees resisted the annulment, and argued that the patent, notwithstanding the breadth of its claim, was limited in effect to the dyeing of mixed fabrics in the piece, and that this was the gist of their invention. In other words, they sought to save the patent by narrowing the claim by reference to the specifications. Rec. pp. 17, 19, 24, 26, 29. Nothing was said about the silky luster given by mercerization under tension. The court held that the claim was broader than the invention described in the argument of the patentees, and it annulled the patent on the ground that the invention described in the patent had been anticipated by Lowe. The course of the litigation exhibited an attempt by the patentees to narrow their invention and the patent which protected it to the mercerization of a mixed woven fabric, a process not used by the defendants. On the other hand, if the German patent were construed in its broader sense, and were treated as analogous to No. 600,826, here in suit, the paten-

tees did not seriously dispute anticipation by Lowe. The controversy was between the German patent and that of Lowe. The decision of this controversy depended upon a determination whether the German patent was similar to No. 600,826, in which case anticipation by Lowe was practically admitted, or was limited to the mercerization under tension of mixed fabrics in the piece, in which case it might stand. The German court gave the patent the first-mentioned construction. Rec. pp. 26, 49.

On September 3, 1895, Thomas and Prevost filed in Germany an application for another patent stated to be for an improvement in the process of mercerizing. It differed from the earlier application chiefly as to the time when tension should be applied. The second patent specified that mercerization should take place without initial tension, but that tension should be applied before the acid or alkali had been washed out. On April 4, 1896, in the course of litigation, the silky luster given by mercerization under tension was first mentioned, and at the same time was considerably emphasized. Letters written to the patentees by their customers indicate plainly that mercerization under tension, suggested by the patentees in order to dye better the cotton constituents of a mixed fabric, was found to be valuable chiefly because of the silky luster which it imparted to the cotton. This result was not at first known to Thomas and Prevost, and was first discovered, some months after their first application, either by them or by some other person using their process. Rec. pp. 73, 229, 504. The first specific mention of it is in a letter dated February 11, 1896 (Rec. p. 81), though a vague suggestion of it appears in a letter to the patentees, written in June, 1895. Lowe had noted the result five years earlier, when he mentioned the "glossy appearance" of the cotton treated by his process, though want of considerable experiment had prevented him from appreciating fully the importance of his discovery. The patentees did not distinguish between a stretching of the fiber to a length greater than it had before mercerization, and restoring the fiber to that length. As between stretching the fiber or merely bringing it back to its original length, the patentees' language was vague; e. g. Rec. pp. 2, 58, 60, 72, 79, 170.

The German Patent Office refused to issue the patent as originally applied for, but after much argument, on July 30, 1898, allowed a claim as follows, No. 97,664:

"A modification of the process described in the patent No. 85,564 as well as in the English patent No. 4,452 of the year 1890, for the mercerization of cotton under tension characterized in this wise: That the cotton saturated with soda-lye is subjected to a considerably stronger distending force than has been obtained by normal application of machines hitherto customarily used for like purpose in skein and piece dye-works, so that even long-fibered and hard-spun cotton can be stretched out to its original length and beyond, and the fiber by the mercerization under tension acquires a lasting silk-like luster in consequence of alteration of its structure." Rec. p. 204.

The gist of the invention patented was thus declared to be the use of machinery of extraordinary stretching power in the mercerization of long-fibered and hard-spun cotton. Rec. p. 233. Lowe was recognized as a pioneer. Indeed, the subsequent annulment of No. 85,-

564, for the reason that it had been anticipated by Lowe, left Lowe the only pioneer. Proceedings to annul No. 97,664 were soon begun. The lower court held that the invention described in the original application was anticipated by Lowe, that the extraordinary distending force was not introduced into the application until 1897, and that before 1897 the process of stretching had become old in the art. The Court of Appeals affirmed this decision, impervious to the argument that the Thomas and Prevost "invention is a German one and deserves national protection." Rec. p. 181. It assumed that the original application had been anticipated by Lowe, and that the patent as granted was limited to the use of extraordinarily strong machinery to stretch long-fibered cotton. The patent was annulled upon the ground that, as granted, it did not correspond to the original application upon which it was necessarily based. The German courts thus held consistently that Thomas and Prevost had invented nothing, except perhaps the application of machinery of extraordinary strength to the stretching of long-fibered cotton. As nothing concerning the nature of this machinery was disclosed, the decisions left nothing patentable to Thomas and Prevost.

On September 26, 1895, Thomas and Prevost applied for a patent in England. The application concerned the matter of both the German applications. It contained no reference to gloss or luster. The claims were as follows:

"(1) The herein-described improvement in treating vegetable fibers for dyeing purposes with alkaline lyes or with acids consisting in subjecting the vegetable fiber (in the hank or as a woven fabric) for the purpose of preventing shrinking of the fiber whilst firmly stretched to the action of the bases or acids and then washing the fiber whilst still stretched until the internal stress or tension thereof has ceased substantially as and for the purposes set forth.

"(2) The herein-described improvement in treating vegetable fibers for dyeing purposes with alkaline lyes or with acids consisting in subjecting without stretching the vegetable fiber (in the hank or as a woven fabric) to the action of bases or acids and then—whilst it is still wet with the lye and shrunken—stretching same to its original length and breadth and thereafter washing same while stretched as before substantially as and for the purposes set forth."

The application was opposed by Lowe, and a patent was refused accordingly. Later Lowe agreed with Thomas and Prevost to withdraw his opposition. Following the English statute, an application was made to the Solicitor General for leave to file new evidence and to reopen the case, so as to permit the patent to be issued either after amendment or by way of reversing the action of the English Patent Office. The Solicitor General refused the application, holding that after Lowe's objection had once been entertained the public had an interest in the contest, which could not be satisfied by an agreement between the contestants. A later application by Thomas and Prevost, September 18, 1896, resulted in a patent, No. 20,714 of 1896, after Lowe had withdrawn his opposition thereto. A patent based upon a bargain with the real inventor and an earlier patentee has no weight as an argument in this case. It follows that the English Patent Office held unequivocally that the invention claimed in the patents in suit was anticipated by Lowe. In Germany, the birthplace of the alleged in-

vention, and in England, the home of the Lowe patent, the latter was held to anticipate everything of real value in the applications of Thomas and Prevost.

Many patents were granted to Thomas and Prevost in countries of continental Europe. In some of these silky luster was mentioned; in others this characteristic was not noticed. No proof has been made of the patent laws of these countries, and so this court is not informed what weight should be attached to the patents therein granted. The application for No. 600,826 was filed in the American Patent Office June 4, 1896. It did not distinguish between mercerization of cotton and flax, and of all vegetable fibers generally. It made no distinction between mercerization by alkalies and by acids. The patent to Lowe was not noticed in the American Patent Office. No. 600,827 was applied for January 22, 1897. The application sought to patent mercerization without tension at the outset; the tension being applied altogether after the fiber is wetted. It is true that the specifications, especially page 2, lines 32–34, are vaguely expressed in this respect, and the complainants' expert has argued that "without tension" means "no such tension before mercerizing as is contemplated and necessary for the production of a silk-like luster," whatever that degree of tension may be. This contention, however, is altogether at variance with the claims in suit.

In No. 600,827, Thomas and Prevost further sought to state invention as follows: While "it is common to treat fibrous materials with certain mercerizing fluids and other mordants while such material is held in a more or less stretched condition," "we are not aware that any one prior to our invention has discovered the important fact herein disclosed, namely, that the fibrous material when subjected to a sufficient stretching action during the mercerizing process will be given a peculiar silk-like luster." But, if the process is unchanged, the discovery of a new result does not constitute invention. If reliance be placed upon some specific degree of stretching, not practiced before, we find that the patent states that "it is sufficiently definite for a proper understanding by those skilled in the art to say that the material must be so stretched during the mercerizing process that the individual fibers will be elongated and the silk-like luster will be produced." The patentee thus says in effect:

"I seek a patent for mercerizing under tension to produce a silky luster. I am aware that mercerizing under tension has been common, but no one has hitherto noticed that a silky luster results. I cannot say how much tension is necessary to produce this luster. It is enough to say that the tension must be sufficient."

This is not to state an invention, and, moreover, as has been seen, Lowe's patent states both tension and resulting gloss. Thomas and Prevost never showed, and, so far as appears, never knew, whether mercerization under tension, or tension after mercerization, whether tension to maintain the fiber at its original length, or tension to increase this length, best imparted the silky luster sought. The evidence shows that it may be produced in all these ways. Having proposed to mercerize mixed fabrics under tension for the sake of an

improvement in dyeing, they discovered by themselves, or were informed by some manufacturer who used their process for its original purpose, of the wonderful and unexpected luster. They did not first invent the process, for Lowe described it clearly. There is no proof that they were the first to notice the luster, because: (1) The time, place, and manner of its first observation in Germany is not shown; and (2) It had been observed five or six years earlier in England by Lowe. They did not invent any detail of the process, which made the result better or more certain than did the process described by Lowe, for their patents in substance disclose nothing as to the time of tension, except that it must be before the yarn is dried, and nothing as to the degree of tension, except that it must be enough and not too much. They do not distinguish between the vegetable fiber that will take on an attractive luster, and the fiber that will not, or between the alkalies which are effective for the purpose, and the acids which are practically useless. Their language does not go beyond Lowe's statement that "fibers such as cotton and flax," "mechanically stretched whilst subjected to the action of or treatment by the sodium hydrate," or subjected "to a stretching process or operation after the sodium hydrate bath, but necessarily before the fabric has lost its temporarily pliable condition," have "a more regular, close and glossy appearance." Of the two Lowe is the more specific.

Summarizing the history, we find that Mercer first suggested the process which has since gone by his name; but he did not distinguish between different kinds of vegetable fiber, nor between the application of acids and alkalies. As the shrinkage was uncontrolled, no practical result followed from his invention, and the silky luster, which is by far the most important result of mercerization, was not suspected by any one. Forty years later Lowe first discovered and suggested mercerization under tension. He further improved upon Mercer by differentiating the various kinds of vegetable fiber and limiting the process of mercerization to "cellulosic fibers (such as cotton and flax)." He also limited his mercerizing agent to caustic soda, and thus pointed out the practical limitations of the art. He discovered that the process would give to the cotton mercerized a glossy appearance, but he did not fully recognize the importance of this result. His invention did not go into practical use, probably by accident, and so the emphasis which experiment would have put upon the luster did not arise from his discovery. Thomas and Prevost, perhaps independently, discovered mercerization under tension. At first they knew nothing of the luster thus imparted; that is to say, they offered no suggestion beyond Lowe's as to the method, and they knew less than did Lowe of the result. But their process came into use, and by their experiment, or by that of others, the silky luster was found to be all important. Thomas and Prevost then tried to save themselves from the anticipation of Lowe by suggesting unimportant differences. These attempts have failed wherever there has been a contest. Thomas and Prevost bought out Lowe, but the success they thus secured in Great Britain and elsewhere is unavailing in the United States, where Lowe's invention belongs to the public. It follows that the claims in

suit are anticipated by the British patent to Lowe, and the bill must be dismissed with costs.

Bill to be dismissed, with costs.